UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHYLLIS W. CHENG, in her official capacity as Director of the California Department of Fair Employment and Housing,<br><br>             Plaintiff,<br><br>   v.<br><br>WINCO FOODS LLC; WINCO HOLDINGS, INC.,<br><br>             Defendants. | Case No.  14-cv-0483-JST<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 10 |

## I. INTRODUCTION

In this action for claims arising under the California Fair Employment and Housing Act ("FEHA") and the Americans with Disabilities Act ("ADA"), Defendants move to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  After careful consideration of the papers, and the arguments of counsel at oral argument, the court hereby GRANTS the motion.

## II. BACKGROUND

### A. The Parties and Claims

Plaintiff Phyllis W. Cheng, Director of the California Department of Fair Employment and Housing, is the head of the state agency charged with enforcing California's Fair Employment & Housing Act ("FEHA"), California Government Code section 12900 *et seq*.  Plaintiff brings this action on behalf of Cristina Verduzco, Angelina Gonzalez-Diaz, and all other similarly situated individuals ("Complainants") against Defendants WinCo Foods, LLC, and WinCo Holdings, Inc. (collectively, "WinCo" or "Defendants"), alleging violations of the FEHA and the federal

1  Americans with Disabilities Act ("ADA").  Complaint for Injunctive and Declaratory Relief and
2  Damages ("Compl."), ECF No. 1.

### B. Factual and Procedural Background

Complainants are former employees of WinCo Foods who allege they were required to take unpaid leave after becoming pregnant because WinCo determined that they could no longer safely perform the full range of their job duties.  Compl. ¶¶ 43-65.  Plaintiff alleges that Defendants failed to accommodate Complainants, or discuss possible alternative working arrangements with them. Id.  ¶¶ 46, 60.  Plaintiff alleges that this practice of requiring a leave-of-absence without any alternative accommodation is part of a company-wide policy, and that DFEH investigations revealed that numerous other employees have suffered from similar discriminatory practices.  Id. ¶¶ 13, 33.

Complainants filed timely complaints with the DFEH alleging that WinCo committed unlawful employment practices against them in violation of the FEHA.  Id. ¶ 6, 9.  They subsequently amended their complaints to allege claims on behalf of themselves and all others similarly aggrieved.  Id.

DFEH investigated complaints pursuant to California Government Code Section 12963. Id. ¶ 13.  On January 24, 2014, DFEH received a Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC").  Id. ¶ 14.  On January 31, 2014, Plaintiff filed this action alleging violations California law pursuant to the FEHA, and federal law pursuant to the ADA.  Plaintiff asserts that this court has subject matter jurisdiction over the ADA claims pursuant to 28 U.S.C. 1331, and has the authority to exercise supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. 1367.  Id. ¶¶ 2-3.

Under Rules 12(b)(1) and 12(b)(6), Defendants move to dismiss Plaintiff's ADA claims on the grounds that the DFEH's enabling statute, the California Fair Employment and Housing Act ("FEHA"), does not confer authority to the DFEH to sue under Title I of the ADA.  Defendants' Motion to Dismiss ("MTD"), ECF No. 10 at 7.  Defendants further move to dismiss on the grounds that even if the Court were to find that the FEHA grants the Department the authority to bring an ADA claim, the Department lacks standing to do so.  Id. at 10-11.  Defendants contend

2

that once the ADA claims are dismissed the Court should decline to exercise supplemental jurisdiction over the remaining state-law claims. Id. at 15.

### C. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the subject matter jurisdiction of the Court. When subject matter jurisdiction is challenged, "the party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists." Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986); see also Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). "Article III's case-or-controversy requirement . . . provides a fundamental limitation on a federal court's authority to exercise jurisdiction . . . [and] 'the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III.'" Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n, 457 F.3d 941, 949 (9th Cir. 2006) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

To establish Article III standing, plaintiffs must satisfy three elements: (1) "injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) causation – "there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) redressability – "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 560–61 (internal quotation marks and citations omitted).

To assert standing in a *parens patriae* suit, a state may not merely "represent the interest of particular citizens," but "must assert an injury to what has been characterized as a "quasi-sovereign interest." Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez ("Snapp"), 458 U.S. 592, 601 (1982). Acknowledging that quasi-sovereign interests defy "formal definition," the Supreme Court has divided them into two general categories. Id. At 607. "First, a State has a quasi-sovereign interest in the health and well-being – both physical and economic – of its residents in general." Id. Second, a state has a quasi-sovereign interest in not being discriminatorily denied its rightful interest within the federal system." Id.

3

## III. ANALYSIS

Defendants argue that the DFEH lacks any statutory or other legal authority to bring a cause of action for a violation of Title I of the ADA. For this reason, Defendants argue that the DFEH lacks standing to bring the ADA claim asserted in this cause of action.

The Court addresses each argument in order.

### A. DFEH's Authority to Bring ADA Suits

#### 1. California Statutory Authority

"[A]dministrative agencies have only those powers that the Constitution or statutes have conferred on them." Am. Fed'n of Labor v. Unemployment Ins. Appeals Bd., 13 Cal. 4th 1017, 1037 (1996); see Dyna-Med, Inc. v. Fair Employment & Housing Com., 43 Cal. 3d 1379, 1385 (1987). Accordingly, to determine the scope of an agency's authority, courts consult the enabling statute. See Dyna-Med, 43 Cal. 3d at 1385. If a court finds that an administrative action has "alter[ed] or amend[ed] the statute or enlarge[ed] or impair[ed] its scope it must be declared void." Association for Retarded Citizens v. Department of Developmental Services, 38 Cal. 3d 384, 391 (1985) (internal quotation marks and citations omitted).

The DFEH is a California administrative agency responsible for enforcing certain California civil rights laws. It derives its authority over employment claims from FEHA. Cal. Gov. Code § 12900 *et seq*. Under this statute, the Department is granted authority to "prosecute complaints alleging practices *made unlawful pursuant to Chapter 6 (commencing with Section 12940)*" and to "bring civil actions *pursuant to Section 12965 or 12981* and to prosecute those civil actions." Cal. Gov. Code § 12930(f), (h) (emphases added).[1]

The foregoing statutes state the full range of prosecutorial powers expressly granted the DFEH in the portion of FEHA dealing with employment discrimination. See Cal. Gov. Code 12930 (f), (h). Courts presume that provisions not listed in a statute are excluded from that statute absent evidence of contrary legislative intent. See Longview Fibre Co. v. Rasmussen, 980 F. 2d

---

[1] All statutory citations hereinafter refer to the California Government Code unless otherwise stated.

4

1307, 1312-13 (9th Cir. 1992) (applying the principle of *expressio unius* to construe a specific statutory provision as excluding unenumerated alternatives or additions). Because the legislature expressly empowered the DFEH to pursue employment discrimination lawsuits under certain specific California statutes, and did not authorize the DFEH to pursue suits under the federal ADA, it appears from the statute that the DFEH does not have this power.

The only cited case suggesting that the DFEH might be authorized to prosecute ADA claims is Dep't of Fair Employment & Hous. v. Law Sch. Admission Council, Inc., 941 F. Supp. 2d 1159, 1167-71 (N.D. Cal. 2013) ("LSAC"). But in LSAC, the ADA requirements the DFEH sought to enforce were incorporated within the FEHA. See id. at 1161 ("[b]y virtue of its incorporation into the Unruh Act, a violation of the ADA also constitutes a violation of the Unruh Act"); see also id. at 1167 ("[t]he Unruh Civil Rights Act[]" [is] incorporated into FEHA via Cal. Gov't. Code § 12948"). The DFEH's statutory authority to enforce the ADA was not at issue in LSAC, but to the extent the court implicitly recognized that authority, it was the authority to enforce "the provisions of FEHA, the Unruh Act, and, *by extension*, the ADA." Id. at 1166 (emphasis added). LSAC provides no support for the idea that the DFEH has statutory authority to enforce ADA requirements not incorporated within FEHA.

Plaintiff contends that the DFEH does have such authority, arguing that two other provisions of the California Government Code grant the DFEH the authority to prosecute ADA claims. The Court addresses each of these arguments in turn.

### a.   Section 11180

Plaintiff contends that the DFEH has an implied power to bring ADA claims pursuant to California Government Code Section 11180, which is incorporated into the FEHA through Section 12902.[2] Plaintiff's Opposition to Defendant's Motion to Dismiss ("Opp."), ECF No. 26 at 6.

---

[2] Section 11180 was incorporated into the FEHA when the FEHA was first enacted in 1980. Stats. 1980, c. 992, § 4. Section 11180 is a "catch-all" provision in the Government Code, which authorizes the heads of government agencies to investigate and prosecute actions that fall within the purview of their departments. It has been a part of the California Government code since 1945. Stats. 1945, c. 111, p. 439, § 3.

Section 11180 provides in pertinent part that "[t]he head of each department may . . . prosecute actions concerning . . . [a]ll matters relating to the business activities and subjects under the jurisdiction of the department." Cal. Gov. Code § 11180(a). Plaintiff argues that enforcement of "[e]mployment discrimination under the ADA is a 'business activity or subject' of DFEH" because "DFEH processes and investigates complaints of employment discrimination under the ADA" through its worksharing agreement with the EEOC. Opp. at 1. Therefore, Plaintiff asserts, the Department is authorized to prosecute ADA claims in federal court pursuant to Section 11180(a). Opp. at 6.

In further support of this contention, Plaintiff observes that the DFEH's mission – the protection of citizens from employment discrimination – is aligned with the goals embodied by the ADA. Id. at 6-9. She notes that the DFEH is charged with "the protection of the welfare, health, and peace of the people" of California, that since 1959 it "has been actively investigating, prosecuting and conciliating complaints of discrimination," that "California's public policy against discrimination on the basis of disability is "substantial and fundamental," and, finally, that "the DFEH is a public prosecutor testing a public right." Opp. at 6-7 (internal citations and quotation marks omitted). For this reason, she concludes that "[d]iscrimination against employees in violation of the ADA is therefore a matter related to the 'business activities and subjects' under DFEH's jurisdiction." Opp. at 8.

Defendants fail to directly engage Plaintiff's point. Instead, they argue that Section 11180 only "authorizes the head of each State department to investigate and prosecute actions concerning 'business activities and subjects *under the jurisdiction* of the department," and that the ADA, a federal law, is not under DFEH's jurisdiction. Defendants' Reply ("Reply") at 4. But this leaves out important language in the provision. Section 11180 states that "[t]he head of each department may . . . prosecute actions concerning . . . *[a]ll matters relating to* the business activities and subjects under the jurisdiction of the department." Cal. Gov. Code § 11180(a). The phrase, "[a]ll matters relating" suggests that Section 11180 extends the prosecutorial power of the DFEH beyond the "business activities and subjects under the jurisdiction of the department" to reach other related matters.

6

But with that said, Section 11180(a) gives no further guidance regarding exactly what matters fall within the DFEH's prosecutorial power, or how closely those matters must relate to powers under the Department's jurisdiction. Plaintiff provides no examples of the DFEH ever before invoking Section 11180 to extend its authority to sue beyond the express authorization contained in its enabling statute.[3]

In fact, Plaintiff cites only one case discussing Section 11180's reach. Opp. at 6 (citing People ex. Rel. Department of Conservation v. El Dorado County ("El Dorado"), 36 Cal. 4th 971, 987 (2005)). But this case sheds little light on the present controversy. In El Dorado, the Legislature expressly "assigned . . . [the Department of Conservation] various responsibilities under" the Surface Mining and Reclamation Act of 1975 ("SMARA"), including the duty to review reclamation plans and financial assurances regarding mining plans. Id. at 981, 989-92; see Cal. Pub. Res. Code § 2774(c). The California Supreme Court held that the Department of Conservation had standing to pursue an administrative writ of mandate (under *state* law) to ensure that local officials issuing mining permits complied with SMARA as well as with the California Environmental Quality Act. To the extent Section 11180 was at issue in El Dorado,[4] it merely

---

[3] It is particularly notable (although of course not dispositive of the question of DFEH's statutory authority) that Plaintiff points the court to no example of the DFEH previously invoking Section 11180 to authorize the agency to bring a cause of action under the ADA. While the California Legislature only recently gave the DFEH the authority to sue in federal court, Stats.2012, ch. 46 (S.B. 1038), § 35, the fact that the DFEH was previously limited to state court should not have barred the DFEH from bringing ADA claims if Section 11180 (or some other source of authority) gave the agency the ability to do so. "State courts have concurrent jurisdiction of ADA claims." Carolyn v. Orange Park Cmty. Ass'n, 177 Cal. App. 4th 1090, 1097, n. 4 (2009), cert denied, 560 U.S. 939 (quoting Black v. Department of Mental Health, 83 Cal.App.4th 739, 744, n. 4 (2000)).

[4] It is not altogether clear that Section 11180 was even directly at issue in El Dorado, since the California Supreme Court said it was "eschew[ing] exclusive reliance on Government Code section 11180 in concluding the Director had standing to bring the actions at issue here." 36 Cal.4th at 987. See also id. at 988 ("correctly understood, the Director's standing to prosecute this petition for a writ of mandate derives from his 'beneficial interest' (Code Civ. Proc., § 1086) – under SMARA and, generally, as a state officer charged with serving the public interest – in the adequacy of approved reclamation plans and financial assurances" ). Whether the Department of Conservation's standing in that case stemmed from Section 11180 or some other authority to ensure that its statutorily assigned responsibilities were carried out under state law, El Dorado only goes so far as holding that a state agency may bring suit under state law when necessary to ensure

1  provided the agency with the authority to bring suit to ensure compliance with the specific statute
2  the agency administered.
3     This same analysis does not apply to the present case.  Here, DFEH claims authorization to
4  sue under a power outside of its express statutory grant, and outside of California law.  Unlike El
5  Dorado, the agency here is not charged with administering or ensuring compliance with the law
6  under which it is suing.  It strains credibility to maintain that the DFEH must have authority to
7  bring ADA claims to fulfill its statutory responsibilities under the FEHA.  See *infra*, at III-B-1.
8     Moreover, Plaintiff's broad interpretation of Section 11180 seems implausible given the
9  statutory history, and in light of the more limited grant of authority granted to the agency under
10 Cal. Gov. Code § 12930(f) & (h).  Section 11180 was enacted in 1945.  Stats. 1945, c. 111, p. 439,
11 § 3.  It was incorporated into FEHA in 1980, at the same time that the Legislature gave the DFEH
12 specific authority to bring suit under specific FEHA provisions.  Stats.1980, c. 992, § 4.[5]  If
13 Section 11180 gave the DFEH authority to sue under any federal or state statute that related to its
14 activities, there would be no need to add a provision giving the DFEH a specific, more limited
15 authority to prosecute and sue under certain specific FEHA provisions.  Plaintiff's reading of
16 Section 11190 would render Cal. Gov. Code § 12930(f) and (h) redundant.
17    Finally, the language of Chapter 2 of the California Government Code cuts against
18 Plaintiff's interpretation of Section 11180 as conferring upon state agencies the power to enforce
19 federal laws that the agencies' organic acts do not give them the authority to enforce.  Section
20 11180 is within Chapter 2 of Division 3, Part 1, the entirety of which is incorporated into the
21 DFEH's enabling statute through Section 12902.  Chapter 2 deals expressly with the
22 administration of California laws by administrative agencies.  It does not purport to expand
23 substantive rights, or create new legal categories for prosecution and investigation.  The first

---

compliance with the state statute it is charged with administering.
[5] It is not clear whether Plaintiff maintains that Section 11180 *always* granted the DFEH this authority, or whether she maintains that it gives the DFEH authority by virtue of its incorporation within FEHA.  If she contends the former, it would seem redundant to give to the DFEH a specific authority in Section 12930(f) & (h) that it (or its predecessor agency, the Division of Fair Employment Practices) had already possessed since 1945.

1   section of Chapter 2 reads "[i]t is the policy of this State to vest in the Governor the civil

2   administration of *the laws of the State*" and "to divide the executive and administrative work into

3   departments as provided by law." Cal. Gov. Code § 11150 (italics added). Nothing in the

4   Chapter's provisions suggests that the Governor or his or her agencies have additional power to

5   pursue claims arising under federal law.

6       Plaintiff cites no case law that supports her interpretation of Section 11180, and the Court

7   finds none. Section 11180 does not confer upon the DFEH the authority to bring an ADA claim.

### b. Section 12930(h)

9       Plaintiff next contends that the DFEH is authorized to bring federal claims under Section

10  12930(h), as it was recently amended, because that section states that the DFEH may bring "civil

11  actions before state or federal trial courts." Opp. at 8; Cal. Gov. Code 12930(h). However, this

12  provision does not grant the DFEH the authority to bring *federal claims*; it merely gives the DFEH

13  the ability to bring the claims it may prosecute *in federal court*. Section 12930(h) is a venue

14  provision. Certainly, it cannot give the DFEH the authority to bring *all* federal claims. The

15  question of which claims the agency can bring must be answered by some other portion of the

16  agency's enabling law.

17      In fact, it is notable that the Legislature felt the need to specifically grant the DFEH

18  authority to bring claims in federal court, and that Plaintiff acknowledges that the agency lacked

19  that authority before the provision was enacted. This only more emphasizes that the DFEH's

20  litigation authority is limited to its enumerated grants of authority.

21      Moreover, Section 12930(h) grants the DFEH power to sue under Section 12965 and

22  12981, neither of which incorporate the ADA. Rather, Section 12965 permits the DFEH to "bring

23  a civil action in the name of the department . . . to eliminate an unlawful practice *under this part*,"

24  which governs "the procedure for the prevention and elimination of practices made unlawful

25  pursuant to Article 1 (commencing with Section 12940) of Chapter 6" of the California

26  Government Code. Cal. Gov. Code § 12965; Cal. Gov. Code § 12960. Section 12981 likewise

27  governs claims brought pursuant to California law. Cal. Gov. Code § 12981. Thus, by the plain

28  terms of Section 12930(h), it does not apply to the ADA.

### 2. Extra-Statutory Authority

Plaintiff asserts three additional bases for the DFEH's authority to bring ADA claims: California common law, a provision of the California Code of Regulations, and a worksharing agreement between the DFEH and the EEOC. The Court addresses each in turn.

#### a. Common-law Authority

Plaintiff contends that, in the event the court finds that the DFEH has no statutorily granted power to enforce the ADA, it can nevertheless bring an ADA claim because "California law grants administrative agencies 'additional powers as are necessary for the due and efficient administration of powers expressly granted by statute, or as may fairly be implied from the statute granting the power.'" Opp. at 11 (quoting Dickey v. Raisin Proration Zone No. 1, 24 Cal.2d 796, 811 (1944)). Plaintiff argues that "[e]nforcing the ADA in federal court . . . is necessary for the efficient administration of the powers granted DFEH because it upholds California's public policy against discrimination on the basis of disability."

Even assuming the continuing viability of this 70-year-old authority, Plaintiff fails to explain why recourse to the ADA is necessary in light of the DFEH's authority to enforce the FEHA, which operates independently of the ADA and provides broader protection for Complainants. See Cal. Gov. Code § 12926.1(a) ("The law of this state in the area of disabilities provides protections independent from those provided in the federal [ADA]" and "[a]lthough the federal act provides a floor of protection, this state's law has always . . . afforded additional protections."). DFEH need not have the authority to enforce the ADA in order to administer the FEHA, and, as discussed *supra*, the authority to sue under the ADA cannot be "fairly implied from the statute granting [the DFEH] power." Dickey, 24 Cal.2d at 810.

#### b. California Code of Regulations title 2, Section 10000

Plaintiff next contends that 2 C.C.R. § 10000 provides the DFEH with authority to enforce the ADA.

Section 10000 reads, in its entirety:

> These regulations interpret, implement, and supplement the procedures of the Department of Fair Employment and Housing

10

> (department) set forth in Article 1 of Chapter 7 (Gov. Code, § 12960 et seq.) (applicable to employment discrimination, Unruh Civil Rights Act (Civ. Code, § 51 et seq.), Ralph Civil Rights Act (Civ. Code, § 51.7), and Disabled Persons Act (Civ. Code, § 54 et seq.) complaints filed with the department) and Article 2 of Chapter 7 (Gov. Code, § 12980 et seq.) (applicable to housing discrimination complaints filed with the department) of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). These regulations and provisions of the FEHA shall govern the department's practice and procedure with respect to the filing, investigation and conciliation of complaints alleging practices made unlawful by any law the department enforces.

Cal. Code Regs. tit. 2, § 10000

Nowhere in this regulation is federal law mentioned, and its absence is conspicuous. However, Plaintiff argues that by including the phrase "'*any law* the department enforces' . . . the DFEH recognized that" the laws referred to by name in Section 10000 "were not the only laws DFEH had the power to enforce." Opp. at 12.

This is not the most compelling reading of the regulatory language. It seems equally likely that the drafter used the words "any law the department enforces" without referring to the previously enumerated statutes – perhaps simply to avoid redundantly listing all the relevant statutes by name, or to ensure that the category would consider any later-added provisions. Even putting this aside, Plaintiff's argument is fairly attenuated, because nothing in the language of Cal. Regs. Section 10000 suggests that the DFEH has authority to bring ADA claims. To the extent she contends that the additional legislative power hinted at by CCR Section 10000 is contained in Section 11180, the Court has already considered and disposed of that argument *supra*. Plaintiff points to no other statutory authority upon which the Court can conclude that the DFEH has jurisdiction over ADA claims. The DFEH's regulations cannot be fairly read to expand the agency's power to include the enforcement of ADA claims.

Even if they could, as discussed above, administrative agencies derive their power from their enabling statutes. See American Federation of Labor, 13 Cal. 4th at 1022-23. An agency cannot expand the scope of its powers independent of a legislative grant of authority. See Assoc. for Retarded Citizens, 38 Cal. 3d at 391; see also Kerr's Catering Service v. Department of Industrial Relations, 57 Cal. 2d 319, 329-330 (1962) ("[A]n administrative agency may not, under

the guise of its rule-making power . . . enlarge its authority or act beyond the powers given it by the statute which is the source of its powers."). The DFEH cannot expand its authority through its own internal regulations.[6]

### c. DFEH/EEOC Worksharing Agreement

The DFEH and the EEOC have a worksharing agreement, "which is designed to provide individuals with an efficient procedure for obtaining redress for their grievances under appropriate State and Federal laws." Worksharing Agreement Between California Department of Fair Employment and Housing and Equal Employment Opportunity Commission for Fiscal Year 2013 ("Worksharing Agreement"), Declaration of Julia L. Montgomery, Ex. 3, ECF No. 26-1. The agreement states that "the EEOC and the FEPA[7] each designate the other as its agent for the purpose of receiving and drafting charges, including those that are not jurisdictional with the agency that initially receives the charges." Id., at II. A. It then states that the DFEH "shall take all charges alleging a violation . . . of the ADA where both the FEPA and the EEOC have mutual jurisdiction." Id., at II. B. Finally, the agreement provides that work will be divided "[i]n recognition of the statutory authority granted to the FEPA by Title I of the Americans with Disabilities Act." Id., at III.

Plaintiff argues that this Worksharing Agreement confirms the DFEH's jurisdiction over Title I ADA complaints. Opp. at 9. However, as already noted, the only route through which an administrative agency can be granted enforcement powers is through statutory authorization from the legislative body that created the agency. A worksharing agreement between a federal and state agency is not a legislative act.

Additionally, whatever the agreement might suggest about the DFEH's potential authority

---

[6] The Court would ordinarily consider whether to defer to the agency's interpretation of the statute it administers, but the Court does not understand the agency to have formally adopted any regulations that specifically address the scope of the agency's authority to bring civil actions under federal law. 2 C.C.R. § 10000 cannot be fairly be read as having done so.

[7] The Worksharing agreement refers to the DFEH throughout as FEPA, or "Fair Employment Practices Agency."

under federal law, the worksharing agreement does not state that the DFEH has authority under *state* law to bring civil actions under the ADA or any other federal law. The Court does not interpret this non-binding agreement as suggesting the DFEH has such authority.

### 3. The ADA

The Court does not understand Plaintiff to concede that the DFEH lacks authority under California law to bring ADA claims. But at oral argument, her counsel's primary argument was that even if California law does not permit the DFEH to bring ADA actions, the ADA itself grants the DFEH this authority.

Under the ADA, "[t]he powers, remedies, and procedures set forth in . . . [Title VII of the Civil Rights Act of 1964] shall be the powers, remedies, and procedures this subchapter provides to . . . any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment." 42 U.S.C. § 12117 (a). 42 U.S.C. § 2000e defines a "person" to include "governments, governmental agencies, political subdivisions, . . . [or] legal representatives," and the ADA incorporates this definition. See 42 U.S.C. § 12111(7) ("The term[] 'person' . . . shall have the same meaning given such term[s] in section 2000e of this title").

Defendants do not dispute that, as a general matter, the ADA authorizes government agencies to sue to enforce the ADA.[8] But it is hard to believe that the ADA imbues *all* state government agencies with the authority to bring ADA actions, even when the laws of the state itself do not permit the agency to take such an action. Plaintiff cites no authority suggesting the ADA has that kind of reach. The more plausible reading of the aforementioned provisions is that a government agency may sue to enforce the ADA, assuming that it is permitted to do so under the laws that created the agency and define its powers. Statutory authorization, of course, need not

---

[8] See Reply at 5, n. 3 ("WinCo does not dispute the State's ability to assert a federal law claim, when the specific federal law so allows. The dispositive point is that the California State Legislature did not grant the DFEH—a California State agency—with statutory authority to pursue the federal ADA claims at issue in this case. Without that authority, the DFEH cannot act.").

13

necessarily be specific. State legislatures do not need to pass a law specifically saying that an agency has the authority to enforce the ADA, if the state's law provides the agency with a broad general grant of authority within which the ability to enforce the ADA might fall.[9] But as discussed *supra*, California law does not provide a generalized grant of litigation authority to the DFEH. To the contrary, California has distributed the agency's litigation authority in a deliberate fashion, extending it only to the enforcement of certain specific laws, and (until recently) only in certain specific venues.

At oral argument, Plaintiff's counsel acknowledged that she does not read the ADA to grant all state agencies with the authority to sue to enforce the ADA. For example, she does not argue that the California Department of Corrections or the Department of Forestry & Fire Prevention could file such a suit. Counsel suggested that the court should read the ADA's authority as extending only to certain specific state agencies, which in the court's judgment are the kinds of agencies which are well-suited to bringing ADA claims. But there is no textual basis in the ADA for such a distinction. And this federal court is not equipped to second-guess – or speculate in the first instance – about how California should organize the machinery of state government to prosecute ADA claims. Those judgments are better left to the legislature and people of California.

### 4. Conclusion

For the foregoing reasons, the Court concludes that no law empowers the DFEH to bring suit for violations of Title I of the ADA. It should go without saying that the court expresses no view on the policy wisdom of this arrangement, and certainly does not intend to diminish the importance of the agency's work in combating workplace discrimination.

---

[9] For example, the California Attorney General "possesses not only extensive statutory powers but also broad powers derived from the common law relative to the protection of the public interest," and "'in the absence of any legislative restriction, (he) [or she] has the power to file any civil action or proceeding directly involving the rights and interests of the state, or which he [or she] deems necessary for the enforcement of the laws of the state, the preservation of order, and the protection of public rights and interest.'" D'Amico v. Bd. of Med. Examiners, 11 Cal. 3d 1, 14-15 (1974) (quoting Pierce v. Superior Court, 1 Cal.2d 759, 761-62 (1934) (other citations omitted; bracketed additions not in the original).

14

**B.      Standing**

Since the DFEH lacks statutory authority to bring ADA actions, Plaintiff lacks standing to bring the only federal claim in this action.

Under "traditional" standing doctrine, the DFEH cannot show the necessary "injury in fact," since the actions challenged in the complaint do not affect the agency itself. Instead, they affect Complainants. Injury in fact can arise from invasion of a statutorily created legal right. See Warth v. Seldin, 422 U.S. 490, 500 (1975). But since the DFEH is not authorized by law to prosecute ADA violations, the actions alleged in the complaint to violate the ADA do not invade any legally protected interest of the agency.

Neither is Plaintiff appropriately situated to assert *parens patriae* standing on behalf of the State of California to enforce the ADA claims. To establish *parens patriae* standing, the state "must articulate an interest apart from the interests of particular private parties." Snapp, 458 U.S. at 607. The states must assert "a 'quasi-sovereign' interest," which could include a state's "interest in the health and well-being – both physical and economic – of its residents in general," and a state's interest "in not being discriminatorily denied its rightful status within the federal system." Id. at 607.

Assuming that the State of California itself could satisfy these requirements in bringing this type of action under the ADA, the DFEH does not stand in the shoes of the state to assert the state's *parens patriae* authority to bring suit in federal court. In all of the *parens patriae* cases to which Plaintiff has directed the court's attention, the opinions concluded (or assumed without discussion) that the *state itself*, or an entity charged by the state's laws to enforce the invoked interest, was party to the case. See id. (noting that there must be "an actual controversy between *the State* and the defendant," and that "*[t]he State* must express a quasi-sovereign interest"); Washington v. Chimei Innolux Corp., 659 F. 3d 842, 847 (9th Cir. 2011) ("The doctrine of *parens patriae* allows *a sovereign* to bring suit on behalf of its citizens") (emphasis added); People by Vacco v. Mid Hudson Med. Grp., P.C., 877 F. Supp. 143, 149 (S.D.N.Y. 1995) ("the People of the State of New York have standing to sue Mid Hudson in *parens patriae* to enforce the ADA"; Attorney General's authority under New York law to represent the people assumed without

discussion); Texas v. Scott & Fetzer Co., 709 F.2d 1024, 1026 (5th Cir. 1983) ("a suit such as the instant one, brought by the Texas Attorney General on behalf of the State, falls squarely and unambiguously within the grant of authority in Section 15.40 of the Texas Business and Commerce Code"); Pennsylvania v. Porter, 659 F.2d 306, 315 (3d Cir. 1981) ("In Pennsylvania, the Attorney General is the officer responsible for vindicating the sovereign interests referred to in the preceding paragraph"); Georgia v. Pennsylvania R. Co., 324 U.S. 439, 447 (1945) ("Suits *by a State*, parens patriae, have long been recognized") (emphasis added); Massachusetts v. Bull HN Info. Sys., Inc., 16 F. Supp. 2d 90, 103 (D. Mass. 1998) ("Because Massachusetts law authorizes the Attorney General to bring such actions as he deems in the public interest, he is a 'legal representative' of the people of the Commonwealth for the purposes of this action").

As discussed above, the State of California has not given the DFEH authority to bring the present action. An administrative agency only represents the State's interests insofar as it has been granted the power to do so. See American Federation of Labor, 13 Cal. 4th at 1017 (1996). Accordingly, the DFEH is not "the State" for the purpose of asserting standing in this action, and cannot bring an ADA claim in the name of the State. The Court need not, and does not, decide whether the State of California itself, the Attorney General, or a state agency explicitly authorized to bring ADA claims, would have *parens patriae* standing to invoke this Court's jurisdiction.

## IV. CONCLUSION

The Court will dismiss all ADA claims for lack of standing. When "a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988) (citation omitted). Accordingly, without reaching their merits, the Court dismisses remaining state law claims without prejudice.

Plaintiff has leave to file an amended complaint to add new factual allegations (not new legal argument) to demonstrative that the DFEH has standing and statutory authority to prosecute actions under the ADA. Plaintiff is ordered to file any such amended complaint not more than 30 days from the date of this order, and to specifically identify in a separate notice the specific factual

allegations she has made to overcome the deficiencies identified in this order.  Any failure to comply with this order will result in dismissal with prejudice.

**IT IS SO ORDERED**.

Dated:  June 10, 2014

_____
JON S. TIGAR
United States District Judge